## THE SCYTHIAN.

### RAMSEY v. THE SCYTHIAN.

(District Court, D. New Jersey. November 30, 1897.)

SHIPPING—LIBEL FOR REPAIRS—EVIDENCE OF VALUE.

When, without previous contract for a specific sum, a vessel has been repaired by day's work, and a fair price charged therefor and for the materials used, the opinions of experts as to the cost or value of such repairs cannot be relied on as a basis for recovery. But, if there is a wide variance between the experts' estimates and the amount charged, this may tend to throw a doubt on the accuracy of the account, and subject the items to severe scrutiny.

This was a libel in rem by Hugh Ramsey against the steamer Scythian to recover for repairs made upon her at his dockyard.

James Parker, for libelant.

Bacot & Record, for claimant.

KIRKPATRICK, District Judge. Some time prior to December 1, 1895, the steamer Scythian was brought by her master, Capt. Hamilton, who was also her registered owner, to the dockyard of Hugh Ramsey, for repairs. The nature of the repairs required had been stated to Mr. Ramsey, and were confirmed by letter dated December 11, 1895. He was directed to proceed with the repairs on the steamer Scythian in accordance with the specifications of Lloyds surveyors, as required by them to give her class of 100 A1 at Br. Lloyds. The vessel was docked and cleared for inspection. Subsequently, without solicitation from Mr. Ramsey, Messrs. Congdon and Maucer, who were connected with Lloyds as surveyors, visited and inspected the vessel, and specified the repairs which they then considered necessary to be done to enable the Scythian to obtain the required class at Lloyds. On the 20th of December, 1895, Ramsey wrote to Hurlburt & Co., who were acting on behalf of the owners, and offered to make all the repairs included in the specifications which had then been made by the said surveyors for a sum not exceeding $11,300. Afterwards, on January 8, 1896, additional repairs were required by the said surveyors, and a supplementary specification of them was given to Ramsey. An estimate of the cost of this work seems to

have been made by Mr. Ramsey, but neither party was able to produce it. Still other repairs were required by the said surveyors. Ramsey did all the work specified by the surveyors, and kept an account of the same. A timekeeper visited the vessel daily, saw the men engaged in working upon her, took their names, and noted the character of work upon which they were engaged, and entered these items in a book kept for that purpose. Afterwards these men were paid by Ramsey for their work according to the time they had been engaged in working upon the vessel as the same had been reported by the timekeeper. The materials necessary for the repairs of the vessel were called for by the workmen, furnished by Ramsey's storekeeper, and charged at fair prices to the vessel. I fail to see how it is practicable to furnish any better proof of the amount of work done, or the quantity of materials furnished. The Lloyds surveyors say that all of the repairs put upon the vessel were made upon their specifications and orders, and that they were necessary to give her the class of 100 A1 in Br. Lloyds. They describe the vessel as being in very bad condition when it was first surveyed by them, in December, 1895, and that, as the work proceeded, new defects were found, which required repair, just as Martin, the claimants' expert, expected would be the case. The claimants, in their argument, though not by their answer, deny the validity of the libelant's claim on the ground that the work was done in pursuance of a contract. The evidence fails to sustain this view. An estimate was made of the probable cost of the repairs which, at an early stage of the work, seemed necessary; but the order to proceed with the work, and to do what was necessary to put the vessel in the class of 100 A1 Br. Lloyds, was not founded on that estimate, nor was there any suggestion made that the work should stop when the estimated price was exceeded. Hurlburt & Co. are represented as being agitated and disturbed when told that the cost of the repairs was exceeding the estimate, and the price at which they had agreed to sell the steamer after she had been classed at Lloyds. If there was a contract by which Ramsey was to do the work for a definite sum, there was no occasion for concern on their part, while, on the other hand, if the vessel was to be liable for repairs amounting to more than the price at which they had agreed to sell her when classed, it is easy to understand why they should "walk the floor," as has been described by one of the witnesses. The vessel was brought to the libelant's shipyard by the master and registered owner. He was present when the survey was made by the Lloyds surveyors, and his instructions were to comply with their directions, and that was done. I find from the record that no work was done except by the order of the Lloyds surveyors, and only so much as was necessary to give the steamer the class 100 A1, Br. Lloyds; that the labor and materials charged for were actually furnished, and the prices charged therefor fair and reasonable. When a vessel has been repaired by day's work, and a fair price charged therefor, the opinion of experts as to the cost or value of such work cannot be relied on as furnishing the basis of recovery. When there is a wide variance between the experts' estimate and the amount charged, it may tend to throw a doubt upon

the accuracy of the account, and subject the items to the severest scrutiny. The record shows that the libelant furnished, on the demand of Dr. Parker, and with the consent of Hurlburt & Co., a steam windlass, for which a charge of $525 was made. This windlass was not necessary to put the vessel in the stipulated class of Lloyds, nor was it ordered by the Lloyds surveyors. It was supplied on the order of Hurlburt & Co., not acting as the agent of the owners, but on their own behalf, in accordance with the terms of an agreement entered into between them and Dr. Parker, to whom, on their own account, they had sold the vessel. It was not furnished on the credit of the vessel, but upon that of Hurlburt & Co. There should also be deducted from the libelant's claim an allowance for the value of the coal taken from the ship's bunkers at the time she was stripped for the inspection of the surveyors. It was about 50 tons, and the value not stated. For the amount of the bill rendered after making these deductions, the libelant is entitled to a decree.